UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| DIVISIONS, INC., d/b/a DIVISIONS MAINTENANCE GROUP, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 24-025-DCR |
| V. | ) ) | |
| BROADSPIRE SERVICES, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Broadspire Services, Inc. ("Broadspire") has moved to dismiss Counts Three (Negligence) and Four (Unjust Enrichment) of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Record No. 8] Broadspire argues that this action is governed by Delaware law, that the negligence claim is barred by the economic loss doctrine, and that the unjust enrichment claim cannot be brought where the parties' relationship is governed by a contract.  Plaintiff Divisions, Inc. d/b/a Divisions Maintenance Group ("DMG") argues that Counts Three and Four have been asserted under Kentucky law but, nonetheless, they are permissible claims under Delaware law.

The Court finds that the contract and quasi-contract claims in this dispute are governed by the laws of the State of Delaware; however, the negligence claim is governed by Kentucky Law.  Counts Three and Four will be dismissed because they are barred under Kentucky and Delaware law, respectively.

- 1 -

## I. Background

DMG is a Kentucky corporation with its principal place of business in Cincinnati, Ohio. [Record No. 1, ¶ 3] It oversees property management and maintenance services for commercial real estate throughout the United States.  [*Id.* ¶ 8] DMG self-insures its commercial general liability service by relying on a third-party administrator ("TPA") to manage and resolve claims asserted against it. [*Id.* ¶ 1]  Broadspire is a Delaware corporation with a principal place of business in Georgia.  [*Id.* ¶ 4]  It provides general liability claims management services and was hired by DMG to serve as its TPA.  [*Id.* ¶ 2]

On June 15, 2020, DMG and Broadspire entered into a service agreement (the "Agreement") under which Broadspire was to serve as DMG's TPA for general liability claims.  [Record Nos. 1, ¶ 10; 1-1] Per the Complaint, Broadspire was expected to perform "the standard services of a general liability TPA."  [Record No. 1, ¶ 20] Broadly speaking, this included the general management and handling of certain claims brought against DMG.  [*Id.*] The Complaint alleges that the parties' contractual relationship "***seemingly*** continued without issue," but in July 2023, DMG learned that Broadspire had been mismanaging claims on DMG's behalf.  [*Id.* ¶ 22]  As a result of this alleged mismanagement, DMG reports sustaining losses in excess of $900,000.00.  [*Id.* ¶ 2]

DMG initiated this action on February 23, 2024, asserting four claims: breach of contract (Count One); indemnification (Count Two); negligence (Count Three); and unjust enrichment (Count Four).  [*Id.* at 9–12] Broadspire moved to have Counts Three and Four dismissed on April 2, 2024.  [Record No. 8] The motion has been fully briefed.

## II.  Legal Standard

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint is construed "in the light most favorable to the plaintiff, [and the Court] accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (discussing Fed. R. Civ. P. 12(b)(6)).  However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).

## III.  Discussion

In resolving this Motion to Dismiss, the Court first determines whether Claims Three and Four are brought under the laws of the State of Delaware or the Commonwealth of Kentucky.  Next, the Court examines whether the controlling state laws permit claims of negligence and unjust enrichment to be brought in this contract dispute.

### A.  Controlling State Law

"[A] federal court sitting in diversity borrows the forum state's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Because this action was brought in this federal court, the Commonwealth's choice-of-law rules apply.  *See State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017).  And because a state's choice-of-law rules differ depending on the area of law at issue, the Court addresses Kentucky's rules as applied to both contract and tort.

### 1. Contract and Quasi-Contract Claims

The parties disagree with respect to which section of the *Restatement (Second) of Conflict of Laws* is applicable. Because unjust enrichment claims are quasi-contractual in nature, Kentucky courts apply the same choice of law rule when assessing contract claims and those for unjust enrichment. *See Ky. Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632–33 (Ky. 2005). DMG asserts that § 188 and Kentucky's adoption of the "Most Significant Relationship" test is used to determine which state's law governs the contract-related disputes. But Broadspire contends that § 188 only applies "[i]n the absence of an effective choice of law by the parties," and notes that § 188 even references § 187 as being otherwise applicable. *See* Restatement (Second) of Conflict of Laws § 188(2) (Am. L. Inst. 1971).

### i. Section 187 v. Section 188

The United States Court of Appeals for the Sixth Circuit has previously concluded that, "in a standard commercial breach-of-contract case . . . the Kentucky courts would choose to adopt § 187 of the *Restatement* as their analytical framework for addressing a contractual choice-of-law clause." *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000). That conclusion was called into question when the Supreme Court of Kentucky rejected a contract's otherwise valid choice-of-law clause after finding that Kentucky had "the greater interest and the most significant relationship to the transaction and the parties." *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 567 (Ky. 2012).

In the years since *Schnuerle*, several decisions from this Court and from the Western District of Kentucky have continued to apply § 187; distinguishing the facts from those presented in *Schnuerle*. *See, e.g.*, *Leafguard of Kentuckiana v. Leafguard of Ky., LLC*, 138 F.

Supp. 3d 846 (E.D. Ky. 2015); *GEICO Indem. Co. v. Crawford*, 36 F. Supp. 3d 735 (E.D. Ky. 2014); *CNH Capital Am. LLC v. Hunt Tractor, Inc.*, No. 3:10-cv-350, 2013 WL 1310878 (W.D. Ky. Mar. 26, 2013). However, the Sixth Circuit has expressly acknowledged its prior error and emphasized Kentucky's reliance on the most significant relationship test. *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) ("Thus, we have had to admit that our *Erie* guess in *Wallace Hardware* was wrong, and that Kentucky's most-substantial-relationship test trumps even an otherwise-valid choice of law clause when the dispute is centered in Kentucky."); *Hackney v. Lincoln Nat'l Fire Ins. Co.*, 657 F. App'x 563, 570 (6th Cir. 2016) ("*Wallace Hardware*'s assumption about the Kentucky Supreme Court's application of [choice of law clauses] has now proven faulty.").

And while Kentucky courts have never expressly rejected § 187, they have consistently applied the most significant relationship test.

> Neither our Supreme Court nor this Court has taken a position on the application of the Restatement § 187 in a choice of law analysis. Rather, our Supreme Court utilizes the Restatement § 188's "most significant relationship" test and has confirmed that it will apply its own law to a dispute with ties to Kentucky even in spite of an otherwise valid choice of law provision.

*Mefford by & Through Scruggs v. GEICO Ins. Co.*, No. 2018-CA-789, 2019 WL 2317158, at *3 (Ky. App. May 31, 2019); *see also Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 574 n.10 (6th Cir. Apr. 25, 2019) ("We have noted that Kentucky courts have not applied or even mentioned § 187 when analyzing cases with contractual choice-of-law provisions.").

The undersigned also is guided by the Sixth Circuit's observation that "Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn*, 865 F.3d at 443.

- 5 -

All things considered, the decision is clear.  Section 188 and the most significant relationship test will guide this Court's analysis.

## ii.  The "Most Significant Relationship" Test

Having concluded that Kentucky courts would apply § 188 of the *Restatement* to the instant choice-of-law issue, the Court will begin there.  *See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013).  Per the *Restatement*,

> [t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

Restatement (Second) of Conflict of Laws § 188(1) (Am. L. Inst. 1971).  Under the most significant relationship test, courts look to a number of factors, including "the place or places of negotiating and contracting; the place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties." *Hodgkiss-Warrick*, 413 S.W.3d at 879 (citing Restatement (Second) of Conflict of Laws § 188(2) (Am. L. Inst. 1971)).

Regarding the first factor, DMG provides that "the Agreement was negotiated [] and signed by DMG in Kentucky."[1]  [Record No. 9. p. 6]  Broadspire fails to provide any indication as to where it may have executed the Agreement, and the Court will not speculate.  But as this

---

[1]    DMG's General Counsel has provided a declaration attesting to these facts.  [Record No. 9-1]  However, the undersigned agrees with Broadspire's conclusion that the declaration falls outside the pleadings and cannot be considered without converting the motion into one for summary judgment.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

- 6 -

Court recently noted, where negotiating takes place "via phone call and email," and "[i]n the absence of strong evidence that one state served as the primary forum for negotiating," the undersigned places little weight on this factor. *Bonfiglioli USA, Inc. v. Midwest Engineered Components, Inc.*, No. 23-cv-014, 2024 WL 2155348, at *7 (E.D. Ky. Apr. 4, 2024); *see also Uniwest Mortg. Co. v. Dadecor Condominiums, Inc.*, 877 F.2d 431, 436 (5th Cir. 1989) (disregarding the place of negotiation and contracting factor because the contract appeared to have been negotiated and executed through the mail and over the telephone).

Turning to the second and third factors, the parties offer the Court almost no guidance in determining either the specific place of performance or the location of the contract's subject matter.  DMG provides its services to customers "across the United States," [Record No. 1, ¶ 1], and notes that the dispute "concern[s] Broadspire's actions and inactions undertaken while managing claims on DMG's behalf," [Record No. 9, p. 6] (parenthetical omitted).  Neither party advises where those relevant actions were to be performed.  Therefore, the Court finds this factor to be neutral.

Lastly, the Court looks to the domicile, residence, place of incorporation and place of business of the parties.  DMG is a Kentucky corporation with its principal place of business in Ohio.  [Record No. 1. ¶ 3] Broadspire is a Delaware corporation with its principal place of business in Georgia.  [*Id.* ¶ 4] This factor is also neutral, offering little to the Court.

## 2.  Overarching Principles

Consideration of the above factors is further guided by the overarching principles announced in section 6 of the *Restatement*:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (Am. L. Inst. 1971); *see also Hodgkiss-Warrick*, 413 S.W.3d at 879 ("As noted above, § 188 of the *Restatement (Second)* provides that the rule of that section is to be applied in light of the more general choice-of-law principles listed in § 6."). Because Kentucky and Delaware have equally strong ties to this contract dispute, these more general choice-of-law principles carry additional weight.

In light of these considerations, the Court's determination becomes evident—Delaware law will control the contract and quasi-contract claims. This determination does not contradict Kentucky's notoriously strong preference for applying its own laws to Kentucky-centric disputes; rather, it reinforces the Commonwealth's commitment to defending "the freedom of contract by enforcing parties' agreed terms," when no such relationship exists. *Swyers v. Allen Fam. P'ship #1, LLC*, No. 2022-SC-0479, 2024 WL 1145865, at *6 (Ky. 2024) (quoting *Care Grp. Heart Hosp. v. Sawyer*, 93 N.E.3d 745, 754-55 (Ind. 2018)); *United Servs. Auto. Ass'n v. ADT Sec. Servs., Inc.*, 241 S.W.3d 335, 342 (Ky. App. 2006) ("[T]here is a broad public policy of freedom of contract in Kentucky . . . ."); *see also* Restatement (Second) of Conflict of Laws § 6(b), (d)–(f) (Am. L. Inst. 1971).

The Supreme Court of Kentucky has long recognized, as "a fundamental tenet" of Kentucky's courts, "that the unambiguous language of a contract will be enforced as written and that the courts will not re-write the contract in contradiction of its plain meaning." *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 685 (Ky. 2012). Where

neither Kentucky nor Delaware have an inherently more significant relationship to the dispute, the choice-of-law question turns on the Commonwealth's own policies, the protection of justified expectations, and the basic policies underlying contract law. *See* Restatement (Second) of Conflict of Laws § 6(2) (Am. L. Inst. 1971). Although Kentucky law will, in some instances, reject a contract's valid choice-of-law clause, this is not such an instance. Section 14.4 of the Agreement is unambiguous and controlling: "The laws of the State of Delaware shall govern this Agreement." [Record No. 1-1, p. 5]

### 2. Tort Action

In *Kirilenko v. Kirilenko*, the Kentucky Supreme Court held that "Kentucky follows the 'most significant relationship' approach in tort and contract cases." 505 S.W.3d 766, 769 (Ky. 2016) (citations omitted). Curiously, the opinion cited a previous decision expressly rejecting the proposition that the most significant relationship test was applicable to tort actions. *See Saleba v. Schrand*, 300 S.W.3d 177, 182 n.2 (Ky. 2009) ("[I]n tort actions, Kentucky law will apply if Kentucky has any significant contacts with the action."). In the years since the *Kirilenko* decision, Kentucky courts have continued to apply *Saleba*'s "any significant contacts" test. This Court will do likewise.

In doing so, the Court is instructed to make its determination "simply on the basis of whether Kentucky has enough contacts to justify applying Kentucky law." *Arnett v. Thompson*, 433 S.W.2d 109, 113 (Ky. Ct. App. 1968). Because this Court has previously recognized that a plaintiff's Kentucky residence is enough to justify the application of Kentucky law, DMG's incorporation within the Commonwealth is determinative. *See Warndorf v. Otis Elevator Co.*, No. 17-cv-159, 2019 WL 137585, at *2 (E.D. Ky. Jan. 8, 2019). Accordingly, DMG's negligence claim will be reviewed under Kentucky law.

## B.  Negligence

The Supreme Court of Kentucky's pronouncement is clear: "A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie."[2]  *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC,* 540 S.W.3d 770 (Ky. 2017) (quoting *Presnell Constr. Managers, Inc. v. EH Constr.,* 134 S.W.3d 575, 589 (Ky. 2004) (Keller, J., concurring)).  "A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action."  *Id.* at 792 (emphasis in original).  In this case, DMG's negligence claim is not independent of the Agreement.

Count Three of the Complaint asserts that "Broadspire has a duty to exercise reasonable care in administering claims on DMG's behalf."  [Record No. 1, ¶ 52] The Complaint then describes the ways in which that duty was breached.  Section 14.5 of the Agreement states: "In the exercise of Broadspire's performance under this Agreement, Broadspire shall discharge its duties with commercially reasonable care, skill, prudence and diligence."  [Record No. 1-1] The duty that DMG asserts as being "independent," is merely a recharacterization of express or implied obligations under the Agreement recited using tort-specific phraseology.  This claim is barred by Kentucky's economic loss rule and will be dismissed.

## C.  Unjust Enrichment

"Before considering a claim for unjust enrichment, 'courts will engage in the threshold inquiry of determining whether a contract already governs the parties' relationship; if it does,

---

[2]      Justice Keller's opinion in *Presnell Construction* encouraged the court to "expressly adopt the economic loss rule."  134 S.W.3d at 583.  While the court implicitly adopted it in *Superior Steel*, 540 S.W.3d at 792, it was formally adopted in *Nami Res. Co., L.L.C., v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 336 (Ky. 2018).

the contract provides the measure of the plaintiff's right.'" *Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 69 (Del. 2022); *see Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("A claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."). DMG cites a number of Delaware cases, arguing that unjust enrichment claims may accompany breach of contract claims in early stages of litigation because plaintiffs are entitled to pursue multiple theories of recovery. But DMG's examples are not analogous and do not support its contention.[3]

Count Four of the Complaint claims that Broadspire was enriched by the "Life of File" fees paid for claim administration, while DMG was impoverished due to the inadequate services rendered. [Record No. 1, ¶¶ 61–64] DMG's attempt to recharacterize the claim as "separate and apart from Broadspire's breach" is without merit. [*See* Record No. 9, p. 14.] The "Life of File" fees are incorporated into the contract and are recoverable through a breach of contract claim. Pursuant to Delaware law, Count Four will be dismissed.[4]

---

[3]      In some of the cited cases, the existence of the underlying contract was in dispute. *See Banks v. Banks*, No. 2022-0428, 2022 WL 17261512, at *6 (Del. Ch. Nov. 29, 2022). ("Here, at this stage, the breach of contract claim is based on an oral partnership agreement that has not been proven, . . . ."). In others, unjust enrichment was permitted to remain merely as a potential measure of damages. *See Firmenich Inc. v. Natural Flavors, Inc.*, No. N19C-01-320, 2019 WL 6522055, at *7–8 (Del. Super. Ct. Oct. 29, 2019) (permitting the plaintiff to "pursue unjust enrichment as a potential measure of damages," while noting that it is "not a standalone claim"); *see also Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 341 (Del. Ch. 2022) ("As a threshold matter, it is important to emphasize that unjust enrichment can operate either as a cause of action or as a remedy.).

[4]      Had this Court determined that Kentucky law governed Count Four, it would similarly be dismissed. "Because unjust enrichment is rooted in equity and 'law trumps equity', courts frequently note that 'unjust enrichment is unavailable when the terms of an express contract control.'" *Superior Steel,* 540 S.W.3d at 778 (first quoting *Bell v. Commonwealth,* 423 S.W.3d 742, 748 (Ky. 2014); and then quoting *Furlong Dev. Co. v. Georgetown-Scott Cty. Planning &*

## IV.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Defendant Broadspire's motion for partial dismissal [Record No. 8] is **GRANTED**.  Counts Three (Negligence) and Four (Unjust Enrichment) of the Complaint are dismissed with prejudice.

2.      The remaining claims in this dispute are governed by the substantive laws of the State of Delaware.

Dated: May 24, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

*Zoning Comm'n*, 504 S.W.3d 34, 40 (Ky. 2016)).  "The doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Codell Constr. Co. v. Commonwealth,* 566 S.W.2d 161, 165 (Ky. App. 1977).